Mercer County Court of Common Pleas.

DOMINICK FURFERI, PETITIONER-APPELLEE, v. PENN-
SYLVANIA RAILROAD COMPANY, RESPONDENT-AP-
PELLANT.

Decided July 15, 1935.

For the petitioner, *Felcone & Felcone.*

For the respondent, *W. Holt Apgar.*

Turp, C. P. J. This matter is on appeal from a judgment
of the workmen's compensation bureau. Carmella Furferi,
petitioner, is the widow of Pietro Furferi, and the action was
brought for compensation for his death alleged to have been
caused by an accident which occurred on August 15th, 1933,
while the decedent was employed by the Pennsylvania Rail-
road Company. The matter presents two questions for deci-
sion, namely, (1) whether or not decedent was engaged in
interstate commerce at the time of the alleged accident, and
if not, then (2) whether or not the alleged accident is com-
pensable under the Workmen's Compensation act.

Decedent was working for the Pennsylvania Railroad Com-
pany, respondent-appellant, hereinafter referred to as appel-
lant, at the time of the alleged accident. Specifically he was
unloading ties from a car standing on a track to the ground.
These ties had been moved on the car from Morrisville, Penn-
sylvania, to the barracks yard of appellant in Trenton, New
Jersey, and the car was kept for several days on a work

track. Eventually, the yardmaster wanted the car released, and the car was released by having the ties unloaded. They were unloaded in a part of the yard which was used more or less for storage purposes, inasmuch as it was an open space and a handy spot to take material. While engaged in unloading these ties the decedent became sick and had pains about the region of his stomach apparently, and had to go home before the end of the day's work. A short time thereafter he died from a strangulated hernia. Either the same day that the ties were being unloaded or the next day, the foreman ordered some of these ties to be placed under number 5 track, which is a track over which trains engaged in interstate transportation pass, and some ties were so placed the next day.

The matter was first argued before this court in the absence of counsel for the appellant and the court affirmed the judgment of the workmen's compensation bureau. Thereafter upon motion of counsel for appellant a rehearing was allowed by the court and was subsequently had and both counsel argued the matter orally and have presented briefs. Practically the entire argument on the rehearing in behalf of appellant was directed to the interstate commerce phase of the case, and two recent cases decided by the New Jersey Supreme Court, namely, *Rossi* v. *Pennsylvania Railroad Co.,* 115 *N. J. L.* 1; 178 *Atl. Rep.* 77, and *Martin* v. *Central Railroad Company of New Jersey,* 115 *N. J. L.* 11; 178 *Atl. Rep.* 82, were stressed. Counsel stated frankly that no reliance was placed upon the fact that the ties originally came from Morrisville, Pennsylvania, outside of this state, to the State of New Jersey, but contended that the ties were being unloaded so as to be available for use in repairing track number 5, and that, therefore, decedent was engaged in interstate commerce. The test of employment in interstate commerce, within the intendment of the federal statute, is this: was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it. Careful consideration has been given to the cases above mentioned decided by the Supreme Court of New Jersey and also the decision of the United

States Supreme Court in *Pedersen* v. *Delaware, Lackawanna and Western Railroad Co.*, 229 *U. S.* 146; 33 *S. Ct.* 648.

The court finds as a matter of fact that these ties were not brought from the State of Pennsylvania specifically for the purpose of being put under track number 5, nor were they being unloaded at the time the decedent was injured for the express purpose of being used only under track number 5. They were being unloaded for storage purposes to be used as needed thereafter. The case, therefore, is different from the Pedersen case in the United States Supreme Court where the material which was to be used in the repair of a bridge was being carried to the bridge for the purpose of being used therein, and in the opinion of this court the transaction involved here is one step removed therefrom. The situation in the case at bar is more nearly analogous to the situations referred to by Mr. Justice Heher in the Rossi and Martin cases, *supra,* wherein he cites cases which hold the employment not to be in interstate commerce and particularly to the cases holding that one engaged in conveying to or depositing in storage bins coal to be used by locomotives engaged in interstate commerce is not within the federal statute. *Martin* v. *Central Railroad Company of New Jersey,* 115 *N. J. L.* 11 (at *p.* 16); 178 *Atl. Rep.* 82.

If decedent had been injured while moving one of these ties from the pile, after they were unloaded from the car, to track number 5, then undoubtedly the decedent would have been engaged in interstate commerce, but at the time he was injured he was merely unloading the ties and storing them in the storage yard for the time being.

The court, therefore, holds that decedent was not engaged in interstate commerce at the time he was injured and, therefore, that the case falls within the New Jersey Workmen's Compensation act. A case very similar to this is that of *Sailor* v. *Missouri Pacific Railroad,* 18 *S. W. Rep.* (*2d*) 82.

With respect to whether or not the alleged accident is compensable under the Workmen's Compensation act, there seems to be no case in New Jersey directly in point. Counsel for appellant contends it is a regular hernia case and should fall within paragraph II(x) of the act of 1911,

chapter 95, as amended, *Pamph. L.* 1919, *ch.* 93 (*Cum. Supp. Comp. Stat.* 1911-1925, *p.* 3874, § **236-11(x), and that the case is not compensible because the provisions of that paragraph were not complied with. If the case falls within this paragraph, counsel for appellant would undoubtedly be correct. The case, however, is not brought for death caused by a newly developed hernia, but for death caused by an aggravation to an already existing hernia; in other words for death caused by aggravation of a pre-existing condition.

Legislative intent in enacting paragraph II(x), *supra,* apparently was for the purpose of preventing frauds being worked upon employers by employes claiming to have been injured and a hernia developed, and for that purpose hernia is defined, and it is only when the hernia is caused and certain developments take place promptly that hernia, itself, is compensable. However, here the man had a hernia for several years and the court finds from the medical and other testimony submitted that the hernia became caught on the day of the accident by reason of the work which the man was doing and thereafter the hernia became strangulated causing the man's death. In the court's opinion this is analogous to other cases involving the Workmen's Compensation act where the courts have held cases compensable where a pre-existing condition has been aggravated by an accident and that the case is, therefore, compensable. It also falls squarely within the case of *Tragle* v. *Hollis Chocolate Co.,* 169 *Atl. Rep.* 472, decided by the Superior Court of Pennsylvania.

The judgment of the workmen's compensation bureau is, therefore, affirmed, with costs to be taxed.