Mackey *v.* Walsh, Appellant.

Argued March 3, 1943.  Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY, and RENO, JJ.

*E. C. Marianelli,* for appellant.

*D. R. Reese,* for appellee.

OPINION BY BALDRIGE, J., April 14, 1943:
The claimant was awarded compensation in the sum of $216.78 for accidental injuries.  The employer, who has appealed from the judgment entered on the award,

contends that the finding of the compensation authorities that the claimant met with an accident as alleged was not based on substantial and competent testimony.

Mackey, the claimant, was employed by the defendant at a gas station. His duties included the selling of gas, making minor repairs to automobiles, and changing of tires. It appears from the testimony offered by the claimant that on July 2, 1941, he was raising a garage door, strained himself, and suffered a hernia in his right inguinal region. He made no complaint to anyone of this injury and made no claim by reason thereof for compensation. On July 9, 1941, while enaged in removing a tire from a truck a long wrench that he was using slipped from a bolt causing him to fall to the ground. He immediately became ill and reported the occurrence to his employer and then went home. That evening he visited a doctor, who evidently did not make an examination but advised him to return the following morning which he did. The doctor then found claimant was suffering from a strangulated right inguinal hernia and sent him immediately to the hospital where an operation was performed.

The appellant admits that if this testimony stood alone and was accepted by the compensation authorities it would be sufficient upon which to rest the award (*Tragle v. Hollis Chocolate Co. et al.*, 111 Pa. Superior Ct. 98, 169 A. 472) but he argues that the effect of this testimony was subsequently destroyed by proof of claimant's written statement that he had not sustained an accident on July 9.

Upon cross examination the defendant produced a statement written by an adjuster of his insurance carrier signed by the claimant on July 22, 1941, when he was in the hospital, twelve days after his operation. This rather long statement set forth that in November or December of 1940 claimant had a sharp pain in his right side when he was attempting to open an overhang-

ing door, but no reference was made to the alleged accident on July 2. It stated that he was laid off by the defendant in March of 1941, and that about three weeks thereafter he went to Bridgeport to obtain a job with General Electric Company, but failed to pass the physical examination because of the injury to his side; that the defendant then agreed to reemploy him. The statement continues: "So I went back for him some time in June 1941. I worked regularly after my return in June 1941 until July 10, 1941, when I entered Mercy Hospital for an operation. I complained to Mr. Walsh on the 8th or the 9th of July that I had a pain in my side. I did not tell him what it came from. It was on July 8 or July 9, 1941 that I first said anything to Mr. Walsh. He was the first one that I reported this to. I was not involved in an accident on July 8 or July 9, 1941. It just seemed that it bothered me more and I decided to have it fixed up. I went to Dr. T. G. Killeen on the evening of July 9, 1941 and entered the hospital July 10, 1941, where I am still a patient. I have read the above and it is truth. (Signed) Michael Mackey."

When asked on the stand whether or not that statement was true the claimant replied: "Well, it is true as I can remember." Then he asked to be allowed to read it. When he read down to where reference was made to his going to Bridgeport he stopped and then denied that portion which said that he did not get a job with the General Electric Company because he did not pass a physical examination and stated that he was not examined by anyone representing that company as he could not get inside their building. In answer to whether the rest of the statement was correct he replied: "That's right."

We think it could be reasonably inferred from the testimony of the claimant taken as a whole that when he was being cross examined he did not read, at least

understandingly, the remainder of the statement following the portion he stated was not correct. His attention was arrested by a misstatement of fact and the rest probably was given little consideration. As the learned judge in his opinion said: "No one asked him any questions about this portion of the statement or the conflict between it and his testimony. It does not appear from the record whether or not he read the statement fully." In any event there was enough evidence for the fact finding body to conclude that the claimant did meet with an accident on July 9. His own employer corroborated the claimant, as he testified without objection that on July 9 he learned from another man that Mackey sustained an accident when taking bolts from a tire, which he was changing; that he immediately went to learn more of the details and found Mackey sitting down complaining of dizziness and severe pain in his right side. In response to his inquiry Mackey told him that the wrench had slipped from the nut and he was thrown to the ground and pointed to his right side or groin and had him feel a hard lump that had formed. Walsh, the witness, advised him to go home as he was unable to continue his work. The next day he did not report for duty and upon inquiry Walsh found that he had gone to the doctor and later learned that he was in the Mercy Hospital.

The appellant cites *Whitecavage v. The Philadelphia and Reading Coal and Iron Company,* 116 Pa. Superior Ct. 540, 543, 176 A. 757, to support his contention that the claimant's statements were so conflicting and unreliable that they defeated his right to an award. There a co-worker, the sole witness in support of the claim, signed a statement before a compensation claim had been filed in which he said that he did not see the deceased when stricken and that the work they were doing at the time of the alleged fatal accident was not unusual. He contradicted his former statement to some

extent when testifying before the referee. We said: "Where, as here, the testimony of the only witness to the alleged accident is so contradictory as to render any inference drawn therefrom a mere conjecture, the burden of proof is not met." In that case, however, there was not one bit of evidence that the labor being performed by the deceased at the time of the alleged injury was not exactly the same sort of work the employee had been doing for a long time, so we held that there was no proof of an accident within our compensation laws. Here proof of an accident was furnished not only by the claimant but by his employer.

Our attention is also directed to *Cox v. Wilkes-Barre Railway Corporation*, 340 Pa. 554, 17 A. 2d 367, which was an action of trespass. A witness for the plaintiff gave testimony in conflict with statements previously made and his attention was expressly called to the inconsistency. It was held that the final statement in such circumstances is the one upon which the plaintiff's case must be judged so far as the testimony of the witness is concerned. Here, as above stated, the claimant's attention was not called directly to any inconsistency between the written statement and his testimony. It must be remembered that a more liberal rule prevails in the admission of evidence in a compensation case than in an action at law for negligence. Evidence, which in the former may be admissible, may be excluded in the latter.

In *Jones v. United Iron & Metal Company*, 99 Pa. Superior Ct. 394, we said page 403: "Nor are we persuaded that a claimant in a compensation case is in a position entirely comparable with that of a plaintiff in an action for negligence." See, also, *Koch v. William Mann Co. et al.*, 126 Pa. Superior Ct. 366, 191 A. 230.

Section 422, art. IV, of the Act of June 2, 1915, of our Compensation Law, P. L. 736, as finally amended June 4, 1937, P. L. 1552, §1, 77 PS §834, expressly pro-

vides that neither the board nor any referee "shall be bound by the technical rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based only upon competent evidence."

It was pointed out in *Johnston v. Payne-Yost Construction Co. et al.,* 292 Pa. 509, 141 A. 481, that rules of evidence in compensation cases are not enforced with the same rigor as in jury trials as a strict application of rules of evidence might defeat the chief purpose of the compensation act which is to permit claims to be proven in a simple and direct manner consistent with justice to both sides.

A careful review of this record convinces us that the testimony offered on behalf of the claimant was sufficient in quality and quantity to support an award.

Judgment is affirmed.